**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CARLETUS LASHAWN WILLIAMS,

    Petitioner,

v.

    CASE NO. 2:11-CV-11741
    HONORABLE DENISE PAGE HOOD
    UNITED STATES DISTRICT JUDGE

CATHERINE BAUMER,

    Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DISMISSING CASE, GRANTING IN PART AND
DENYING IN PART A CERTIFICATE OF APPEALABILITY,
GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS,
DENYING REMAINING MOTIONS FOR RESTRAINING ORDER,
TO APPOINT COUNSEL AND FOR DEFAULT**

Carletus LaShawn Williams, ("Petitioner"), confined at the Alger Correctional Facility in Munising, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his convictions for possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, M.C.L.A. 333.7401(2)(a)(iii); possession with intent to deliver less than 50 grams of cocaine, M.C.L.A. 333.7401(2)(a)(iv); two counts of felon in possession of a firearm, M.C.L.A. 750.224f; three counts of felony-firearm, M.C.L.A. 750.227b; and one count of carrying a concealed weapon in a motor vehicle, M.C.L.A. 750.227(1). For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court. Petitioner was also acquitted of a possession of marijuana charge. This Court recites verbatim the relevant facts relied upon by the Michigan Supreme Court in affirming petitioner's conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Officers from the Oakland County Narcotics Enforcement Team executed a search warrant at a Motel 6 motel room on November 4, 2004. They knocked and announced their presence, and they forced the door open when they received no response. As they entered, defendant, the sole occupant, was just walking out of the bathroom and the toilet was in mid-flush. A bag of suspected crack cocaine was caught in the drain and an officer fished it out. Another officer broke the toilet bowl and recovered one or more small rocks. In the room itself, the officers found some large chunks of suspected crack cocaine, several small rocks in individual "corner ties," a digital scale, a box of razor blades, a container of sandwich baggies, some individual baggies with missing corners, a pair of scissors, two handguns and ammunition, over $ 500 in cash, and a receipt showing that the room had been rented to defendant. The suspected narcotics weighed at least 50 grams and tested positive for cocaine.
>
> Pontiac police officers testified that they executed another search warrant at 510 Nevada on February 2, 2005. The officers saw defendant arrive in a 1994 Ford and enter the house shortly before the warrant was executed. The officers again knocked and announced their presence, then forced the door open when they received no response. Defendant and another person were in the living room. Defendant was seated in a chair with a brown bag in his lap. He was leaning down with his right hand extended toward the floor between the chair and the television set. He ignored orders to raise his hands. On the floor where defendant had been reaching, the officers found a plastic bag containing approximately 18 rocks of suspected cocaine. The bag in defendant's lap contained sandwich baggies and a pair of scissors. A digital scale and a box of sandwich baggies were on top of the television, along with a set of keys that included a key to the 1994 Ford. Both inside the back of the television and on the floor behind it were empty baggies and used "corner ties" with cocaine residue. Defendant had over $ 1,000 in his wallet. Inside the trunk of the 1994 Ford, the officers found a handgun and two assault rifles. The suspected narcotics weighed just under ten grams and

> tested positive for cocaine.
>
> The prosecutor moved under MCR 6.120(A) and (B) to consolidate for a single jury trial the offenses charged as a result of defendant's November 4, 2004, and February 2, 2005, arrests. In the alternative, the prosecutor moved to introduce evidence of each offense in the other trial under MRE 404(b). Defendant objected to both motions. The trial court granted the prosecutor's motion for joinder, holding that the offenses were "related" under MCR 6.120(B) because "[b]oth of the acts that are involved here do appear to the Court to be parts of a single scheme or plan; namely, drug trafficking and therefore they would appear to be related offenses." The trial court further explained that "[t]he Court is concerned about the potential for prejudice, but the Court believes there actually is a greater risk of prejudice if we had separate trials and the Court would allow 404(b) even to be used in the form of the conduct of the offense that is not the subject of a particular trial."
>
> *People v. Williams,* 483 Mich. 226, 228-30; 769 N.W. 2d 605 (2009)(footnotes and citations omitted).

Petitioner's conviction was affirmed on appeal by the Michigan Court of Appeals. *People v. Williams,* No. 266807, No. 2007 WL 3119399 (Mich.Ct.App. October 25, 2007). Petitioner then applied for leave to appeal with the Michigan Supreme Court, which granted his application for leave and directed the parties to address (1) whether the defendant was entitled to separate trials under M.C.R. 6.120; (2) whether *People v. Tobey*, 401 Mich. 141, 257 N.W.2d 537 (1977), is consistent with M.C.R. 6.120; and (3) if the joinder was erroneous, whether the error may be deemed harmless. *People v. Williams,* 481 Mich. 884; 748 N.W. 2d 883 (2008). A majority of the Michigan Supreme Court subsequently affirmed petitioner's conviction, holding that the separate drug charges were part of a single scheme or plan of drug trafficking and that pursuant to M.C.R. 6.120, the offenses were related and subject to joinder in a single trial, that the language of M.C.R. 6.120 regarding joinder of offenses superseded the holding in *Tobey,* and that any error in joining these cases was harmless, since evidence of each charged offense could have been introduced in the other

trial. *People v. Williams,* 483 Mich. 226; 769 N.W. 2d 605 (2009)(Kelly, CJ, joined by Cavanagh and Hathaway, JJ., dissenting); *reh. den.* 485 Mich. 869, 771 N.W.2d 746 (2009). [1]

Petitioner then filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Williams,* No. 04-199576-FH (Oakland County Circuit Court, March 19, 2010). The Michigan appellate courts denied petitioner leave to appeal. *People v. Williams,* No. 297389 (Mich.Ct.App. September 24, 2010); *lv. den.* 489 Mich. 860; 795 N.W. 2d 138 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred in joining two cocaine charges where the incidents were separated by three months and were unrelated.

II. The Petitioner was entitled to relief in accordance with M.C.R. 6.508 (D)(3)(a)(b)(iii) because he had good cause for failure to properly raise the issues on appeal M.C.R. 6.508 (D)(3)(a)(b)(iii), namely ineffective assistance of appellate counsel.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[1] Although the Michigan Supreme Court's opinion on www.westlaw.com does not indicate that Justices Cavanagh and Hathaway joined Chief Justice Kelly in her dissent, the opinion contained in the bound volume of the Michigan Supreme Court reporter, as well as a copy of the slip opinion which is included as part of the Rule 5 materials in this Court's Dkt. # 9-13, indicate that both Justices joined in the dissent.

4

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786

5

(2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Therefore, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

**A. Claim # 1. The improper joinder claim.**

Petitioner first contends that his constitutional rights were violated when the trial court permitted joinder of the two separate cocaine charges in a single trial, when the incidents were unrelated and separated by three months.

In rejecting this claim, the Michigan Supreme Court concluded:

In this case, the record reflects that the trial court correctly applied the plain language of MCR 6.120 to the facts presented when it concluded that the offenses charged were "related." After hearing arguments from the parties, the trial court specifically addressed the language of MCR 6.120(A) and (B). The court concluded that the offenses charged in both cases reflect defendant's "single scheme or plan" of drug trafficking. MCR 6.120(B)(2). Consequently, defendant had no right to sever these "related" offenses. MCR 6.120(B). The trial court noted that in light of the relevant facts, a single jury trial was appropriate and, further, the court stated that it would "be cautioning the jury that they need to find that both events have to meet the standard of proof beyond a reasonable doubt."

We conclude that the trial court did not violate the unambiguous language of MCR 6.120. The offenses charged were plainly "related" under MCR 6.120(B)(2). In both cases, defendant was engaged in a scheme to break down cocaine and package it for distribution. Evidence of acts constituting part of defendant's single scheme was found in both the motel room and the house at 510 Nevada. Even if one views defendant's first arrest in November and his second arrest in February as discrete moments in time, direct evidence indicated that he was engaging in the same particular conduct on those dates. The charges stemming from both arrests were not "related" simply because they were "of the same or similar character." Instead, the offenses charged were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution. Accordingly, the trial court complied with what the language of MCR 6.120 unambiguously required.

*Williams,* 483 Mich. at 233-35 (internal footnotes omitted).

The Supreme Court further concluded that any error in joining these two cases was

harmless at best, because the evidence of each charge could have been introduced at the other trial under M.R.E. 404(b). *Id.* at 243-44. The Michigan Supreme Court further noted that the trial court instructed the jury that it "must consider each crime separately in light of all of the evidence in this case" and further that it "may find the defendant guilty of all or any combination of these crimes or not guilty." *Id.*

Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane,* 474 U.S. 438, 446, n. 8 (1986). Misjoinder rises " to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.* Another judge in this district, in rejecting a similar claim, indicated that he had "found no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him." *Rodriguez v. Jones,* 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009).

In considering whether the denial of severance of charges amounted to an error warranting relief in a habeas proceeding, the issue is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. *See Davis v. Coyle,* 475 F.3d 761, 777 (6th Cir. 2007). In order to obtain federal habeas relief. a habeas petitioner must show that the misjoinder of separate criminal charges in a single trial in state court resulted in prejudice so great as to deny the petitioner his right to a fair trial. *Id.* To establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *U.S. v. Saadey*, 393 F.3d 669, 679 (6th Cir. 2005). A jury is presumed capable of considering each criminal count separately and any prejudice

arising from trial of joined offenses may be cured by limiting instructions. *U.S. v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002). "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *U.S. v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007).

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(citing M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W. 2d 490 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524 N.W. 2d 682 (1994)). Finally, under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in M.C.R. 6.120(B). M.C.R. 6.120(B) defines related offenses that are those "based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan."

In the present case, it was not fundamentally unfair to join the two criminal cases against petitioner in a single trial "because all the charges were drug related and joinder was an efficient use of resources." *Rodriguez v. Jones*, 625 F. Supp. 2d at 561. Because of the differences between the evidence concerning the November 4, 2004 and the February 2, 2005 incidents, it is unlikely "that the jurors would have confused any issues or that any evidence would have spilled over from one case into another." *Zirker v. U.S.,*

253 Fed. Appx. 573, 577 (6th Cir. 2007). Although both sets of counts involved the possession of cocaine, they occurred several months apart, "thus making the cases more distinct." *Id.* In addition, in light of the fact that the jurors acquitted him of the possession of marijuana charge, petitioner is unable to show that he was prejudiced by the joinder, because it shows that the jury was capable of considering the evidence as to each charge separately. *Cope,* 312 F.3d at 781; *United States v. Graham*, 275 F.3d 490, 513 (6th Cir. 2001)(applying Rule 14 and noting that acquittal constitutes "proof that the jurors were able to distinguish between the drugs and weapons evidence ..."); *Zirker*, 253 Fed. Appx. at 577 (the "existence of an acquittal virtually guarantees a finding of no prejudice" involving the joinder of offenses at a single trial); *Rodriguez,* 625 F. Supp. 2d at 561.

Petitioner was not prejudiced by the joinder of the charges, because the Michigan Supreme Court concluded that each of the cocaine charges would have been admissible under M.R.E. 404(b) against the other cocaine charge had separate trials been held. In petitioner's case, even if the cases involving the two different cocaine charges been tried separately, evidence from each crime would have been admissible in the trial involving the other cocaine charge pursuant to M.R.E. 404(b) because of the common scheme or plan. Petitioner was therefore not prejudiced by the joinder of the charges in this case. *See U.S. v. Jacobs,* 244 F.3d 503, 507 (6th Cir. 2001); *See also Krist v. Foltz,* 804 F.2d 944, 947-48 (6th Cir. 1986)(although joinder of two robbery counts may have been improper, similarity in details of the two robberies and their closeness in time would have made evidence of one crime admissible at the separate trial of the other; therefore, the petitioner suffered no prejudice from his counsel's failure to move for severance of the charges).

Finally, the trial judge gave the jurors a cautionary instruction, which advised them

that they "must consider each crime separately in light of all of the evidence in this case" and further that they "may find the defendant guilty of all or any combination of these crimes or not guilty." (Tr. 10/24/2005, p. 188). The trial court's cautionary instruction adequately cured any possible prejudice from the joinder of the separate charges at one trial. *Jacobs,* 244 F.3d at 507.

Petitioner has failed to show that he was prejudiced by the joinder of the charges in this case. Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. Petitioner's post-conviction claims.

In his second claim, petitioner contends that he is entitled to habeas relief on several claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner alleges that the prosecutor violated Michigan Court Rules and *Brady v. Maryland,* 373 U.S. 83 (1963) by refusing to reveal that a police informant was a police officer, that a police officer committed perjury at his trial, that the prosecutor committed misconduct by charging petitioner with multiple counts of felony-firearm, and that appellate counsel was ineffective for failing to raise these claims on his appeal of right.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can

11

demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Oakland County Circuit Court judge rejected petitioner's motion for relief from judgment, finding that petitioner had "failed to satisfy either the good cause or the actual prejudice prong of the two-part standard of M.C.R. 6.508(D)(3)." *People v. Williams,* No. 04-199576-FH, * 9 (Oakland County Circuit Court, March 19, 2010). Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial court may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative

ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's remaining claims are procedurally defaulted.[2]

With respect to his post-conviction claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

---

[2] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291; *Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004). However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

14

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a seventeen page appeal brief which challenged the joinder of the two separate cocaine cases into one trial.[3] When petitioner raised this issue with the Michigan Supreme Court after the Michigan Court of Appeals had affirmed his conviction, petitioner came within one vote of getting his conviction reversed based on the issue that appellate counsel had raised in his appeal brief on his appeal of right. Petitioner has not

---

[3] *See* This Court's Dkt. # 9-19.

shown that appellate counsel's strategy in presenting this claim and not raising other claims was deficient or unreasonable. For the reasons stated by the Oakland County Circuit Court in rejecting petitioner's post-conviction claims and by the Assistant Michigan Attorney General's answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010); *cert. den.* 131 S. Ct. 1013 (2011)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Petitioner has failed to show cause to excuse his default. Accordingly, it is unnecessary to reach the prejudice issue regarding his post-conviction claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not presented any new reliable evidence that he is innocent of these crimes, as such, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits. *See Malcum,* 276 F. Supp. 2d at 677.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated above, petitioner has failed to show that his post-conviction claims have any merit. Petitioner is not entitled to habeas relief on his remaining claims. The Court denies the petition for writ of habeas corpus.

### IV. Certificate of Appealability / In Forma Pauperis Status on Appeal

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[4] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district

---

[4] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id*.

Although the Court believes that its decision to deny habeas relief was correct, the Court will nonetheless grant petitioner a certificate of appealability on his first claim involving the alleged improper joinder of the cocaine offenses for the following reason. Chief Justice Marilyn Kelly of the Michigan Supreme Court issued a strong dissent from the majority decision, in which she was joined by two other Michigan Supreme Court justices. *See People v. Williams,* 483 Mich. at 250-270. "When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011). A district court should deny a certificate of appealability on an issue that divides a state appellate court "only in the unlikely event that the views of the dissenting judge(s) are erroneous beyond any reasonable debate." *Id.* The fact that three Michigan Supreme Court justices would have reversed petitioner's conviction based on the joinder of these

18

two separate drug cases shows that jurists of reason could decide the issues raised in this petition differently or that the issues deserve encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, n. 7 & 824 (E.D. Mich. 2001)(habeas petitioner entitled to certificate of appealability from district court's determination that state appellate court reasonably applied federal law in determining that any Confrontation Clause error was harmless, where one judge on the Michigan Court of Appeals dissented and indicated that he would have reversed petitioner's conviction; dissent showed that a reasonable jurist found that the issue should have been decided differently); *See also Tankleff v. Senkowski,* 135 F.3d 235, 242 (2nd Cir. 1998)(pre-AEDPA habeas petitioner entitled to certificate of probable cause to appeal, where intermediate state appellate court split three to two on the *Miranda* issue and the propriety of the prosecutor's summation). The Court grants petitioner a certificate of appealability with respect to his first claim.

Petitioner is not entitled to a certificate of appealability on his second claim, because reasonable jurists would not disagree with this Court's determination that petitioner procedurally defaulted the issues contained within his second claim and failed to show good cause to excuse the default. *See Wardlaw v. Howes,* 575 F.Supp.2d 820, 821 (W.D. Mich. 2008).

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis status* if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus [#1] is **DENIED WITH PREJUDICE AND THIS CASE IS DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect to petitioner's first claim and **DENIED** with respect to his remaining claims.

**IT IS FURTHER ORDERED** that petitioner is granted leave to proceed on appeal *in forma pauperis*.

**IT IS FURTHER ORDERED** that petitioner's Motion for Restraining Order and for Transfer [#3] is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's Motion to Appoint Counsel [#5] is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's Motion for Default [#7] is **DENIED.**


Dated: September 29, 2011      S/Denise Page Hood
                               DENISE PAGE HOOD
                               UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Carletus Williams 206039, Alger Maximum Correctional Facility, Industrial Park Drive, P.O. Box 600, Munising, MI 49862 and the attorneys of record on this date, September 29, 2011, by electronic and/or ordinary mail.

                               S/Julie Owens
                               Case Manager, (313) 234-5160